13 CIV 2658

JUDGE SCHEINDLIN

JACOB SHISHA
TABAK, MELLUSI & SHISHA LLP
29 Broadway
New York, NY 10006
(212) 962-1590
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL J. KETSCHEK<br><br>        Plaintiff,<br><br>    vs.<br><br>SHAW ENVIRONMENTAL, INC.,<br>SHAW ENVIRONMENTAL &<br>INFRASTRUCTURE, INC., CHICAGO<br>BRIDGE AND IRON COMPANY NV and<br>D. BRAKE MARINE LLC.<br><br>        Defendants | Case No.: 13 Civ<br><br>COMPLAINT<br><br>PLAINTIFF DEMANDS TRIAL BY JURY<br><br>RECEIVED<br>APR 23 2013<br>U.S.D.C. S.D.N.Y.<br>CASHIERS |

**ACTION UNDER SPECIAL RULE FOR SEAMEN TO SUE WITHOUT SECURITY OR PREPAYMENT OF FEES**

Plaintiff complaining of the Defendants respectfully states and alleges upon information and belief:

**JURISDICTION**

1.    Jurisdiction is predicated on 28 U.S.C §1331 federal question under the "Jones Act" 46 U.S.C. §10304; 28 U.S.C.§1332 diversity of citizenship, and 28 U.S.C. §1333 admiralty and general maritime jurisdiction for maintenance and cure.

COMPLAINT - 1

## THE PARTIES

2. Plaintiff, Michael J. Ketschek, is a citizen of New Jersey, residing in Atlantic County, NJ. He was injured while working as a seaman for Defendant D. Brake Marine. LLC and sustained injuries in excess of $75,000.00.

3. Defendant, Shaw Environmental, Inc. ("Shaw"), is a Louisiana, corporation with its principle place of business in Louisiana.

4. Shaw is licensed by the New York State Department of State, Division of Corporations to engage in business in the State of New York, maintains offices in Manhattan and Staten Island and has appointed an agent for service of process at 111 Eighth Avenue, New York, NY 10011.

5. Defendant, Shaw Environmental & Infrastructure, Inc. ("Shaw Infrastructure"), is a Louisiana, corporation with its principle place of business in Louisiana.

6. Shaw Infrastructure, Inc. is licensed by the New York State Department of State, Division of Corporations to engage in business in the State of New York, maintains offices in Manhattan and Staten Island and has appointed an agent for service of process located at 111 Eighth Avenue, New York, NY 10011.

7. Defendant, Chicago Bridge & Iron Company, NV ("CBI") is a Netherlands corporation with its principle place of business in Texas.

8. CBI is licensed to do and is doing business in New York, maintains offices in Manhattan and Staten Island and has appointed an agent for service of process located at 1633 Broadway, New York, NY 10019.

9. In 2013 CBI acquired defendants Shaw and Shaw Infrastructure.

10. CBI has assumed the liabilities and/or is legally bound for the liabilities of the acquired companies Shaw and Shaw Infrastructure.

11. Defendant, D. Brake Marine, LLC ("D.Brake"), is a Connecticut limited liability corporation, located in Madison CT, about 75 miles from this district.

12. D. Brake has no members who are citizens of New Jersey.

13. D. Brake has and continues to do business in New York on a daily and continuous basis.

14. General Electric ("GE") undertook a project to remediate PCB contamination of the Hudson River bed, by one of its plants in New York. The project required dredging the river bottom, loading the dredge spoils on barges which would transport the spoils to a nearby unloading facility where the contaminated dredge spoils are offloaded by a crane from the barges and loaded onto trucks for transport to treatment / disposal sites.

15. GE contracted with Shaw and/or Shaw Infrastructure to operate the unloading facility.

16. Shaw then contracted D. Brake to provide a tugboat to shift the barges in and out of the unloading facility.

17. D. Brake hired Plaintiff to work as a deckhand on its tug BIG BEND that was under charter to Shaw.

## FACTS LEADING UP TO ACCIDENT

18. After the dredge loaded a barge the barge is towed to a location near the unloading facility where it is moored, waiting to be unloaded. The barges would then

be positioned alongside a bulkhead where a shore side crane would unload the barge. Shaw and /or Shaw Infrastructure would instruct the captain of the D Brake tug where alongside side the bulkhead they wanted the barge positioned.

19. During the unloading process the barge has to be moved up and down the bulkhead. This particular operation is done by Shaw/Shaw Infrastructure by utilizing a 2" Kevlar line, called an "index line", to warp[1] the barge up and down the bulkhead. The index line is located on a shore side winch. The line is led down the dock and secured to the barge. The barge's mooring lines are then slackened and the index line reeled on the shore side winch; as the index line is reeled in it pulls the barge along the bulkhead.

20. On or about June 29, 2011 at about 1:00 hours Shaw/Shaw Infrastructure instructed BIG BEND's captain to move one of the barges located at the bulkhead of the unloading facility. BIG BEND's captain, Plaintiff's supervisor, in turn instructed Plaintiff to go onto the barge and untie the mooring lines connecting the barge to the bulkhead so that the tugboat could shift the barge.

21. BIG BEND's captain maneuvered the tug alongside the barge and Plaintiff boarded the barge. Plaintiff walked to the stern of the barge and untied the barge's stern line then proceeded to walk up to the barge's bow to untie the bow line.

22. As Plaintiff was walking up to the bow, unbeknownst to him, Shaw/Shaw Infrastructure started warping another barge that was moored at the bulkhead by use of the index line. The index line got snagged and got very taut; it then suddenly freed itself and snapped out like a lethal rubber band swinging over the barge where Plaintiff

---

[1] Warp is a maritime term that denotes moving a vessel up and down a dock solely by means of lines; usually the bow line is pulled in while the stern line is slackened; or vice a versa the stern line is pulled in and the bow line slackened to move in the opposite direction.

was working striking his left arm, wrist and hand causing him to spin and fall to his knees.

### FIRST COUNT NEGLIGENCE AGAINST SHAW/SHAW INFRASTRUCTURE

23.     Shaw/Shaw Infrastructure performed and controlled the warping operations and unloading operations.  Prior to Plaintiff's accident they had received complaints that the index line would get snagged,  was frayed  and had snapped on prior occasions and  requests were made to Shaw/Shaw Infrastructure  to modify the warping system to correct this problem; Shaw/Shaw Infrastructure  was aware that Plaintiff would be working on the inshore side of the barge and should not have attempted to tighten the index line while Plaintiff was on the barge, because they were aware or should have been aware of the risk that the line would snag and snap back and strike a person working on the barge; Shaw/Shaw Infrastructure  should have monitored the leads of the index lines on the other barge and on the dock to make sure it was not getting snagged; they should have monitored the tension on the index line and determined that it was snagged due to the increased tension and should have stopped tightening it before it freed up and snapped;   Shaw/Shaw Infrastructure should have warned Plaintiff and his supervisor of the pending warping operations and advised not to board the barge until they were completed;  Shaw/Shaw Infrastructure had received complaints that the lights in the area of the barge were not working and had to be repaired, but failed to do so.

24.     The acts and omission of Shaw/Shaw Infrastructure listed in the preceding paragraph constituted negligence which was the cause of Plaintiff's injuries.  As a result Plaintiff sustained multiple injuries to his left elbow forearm, wrist and hand

and injuries to hand and fingers on right hand; he required a scaphocapitate arthodesis (fusion) and subsequent pin removal and has sustained anxiety and depression as a result of his injuries and inability to work.

25.    Plaintiff has sustained loss of earnings, incurred medical expenses, pain and suffering and will incur future medical expenses, loss of earnings, pain and suffering in an amount, exceeding $75,000.00 excluding interest and cost, which will be proven at trial.

### SECOND COUNT JONES ACT NEGLIGENCE AND UNSEAWORTHINESS AGAINST D. BRAKE

26.    Plaintiff asserts and re-alleges the allegations of paragraphs 1 to 25.

27.    As Plaintiff's Jones Act employer D. Brake had a non-delegable duty to provide Plaintiff with a safe place to work.  This duty includes inspection of vessels and adjoining areas where Plaintiff worked. D. Brake failed to inspect the work site and barge to make sure that no warping activities would be conducted when Plaintiff was on the barge. D. Brake was aware that the index line was getting snagged and had snapped previously; complained and requested Shaw/Shaw Infrastructure take corrective action to prevent this.  BIG BEND 's captain should have confirmed via radio that Shaw/Shaw Infrastructure would not attempt to warp any barges while Plaintiff was working in an area where he could get struck; D. Brake's captain should have monitored the activities on at the dock and upon observing that the index line was being tightened contacted Shaw/Shaw Infrastructure and request they stop the operation and advise Plaintiff to get out of the zone of danger.  D. Brake should not have allowed Plaintiff to work in an area where there was inadequate lighting; D. Brake

should have had procedures to coordinate the work with Shaw/Shaw Infrastructure and to conduct a risk analysis to determine when it was safe to board the barge.

28. The acts and omission of D. Brake listed in the preceding paragraph constituted negligence which was the cause of Plaintiff's injuries.

29. The acts, omissions and conditions set forth in paragraph 27 and the fact that the combined tow of the BIG BEND and the barge were positioned in area which was subject to getting struck by the index line and had inadequate lighting, rendered the vessels unseaworthy which was the cause of Plaintiff's injuries.

30. As a result of D. Brake's negligence and the unseaworthiness of the BIG BEN and the barge Plaintiff sustained multiple injuries to his left elbow forearm, wrist and hand and injuries to hand and fingers on right hand, he required a scaphocapitate arthodesis (fusion), and subsequent pin removal and has sustained anxiety and depression as a result of his injuries and inability to work.

31. Plaintiff has sustained loss of earnings, medical expenses pain and suffering and will sustain future medical expenses, loss of earnings, pain and suffering in an amount, exceeding $75,000.00 excluding interest and costs, which will be proven at trial.

### THIRD COUNT

32. Plaintiff asserts and re-alleges the allegations of paragraphs 1 to 31.

33. D. Blake, as Plaintiff's employer, is liable to pay Plaintiff maintenance and cure until he reaches maximum medical improvement.

34. Plaintiff has not reached maximum medical improvement.

35. Maintenance and cure is an ongoing obligation; Plaintiff demands all unpaid maintenance and cure up to date of trial or until he reaches maximum medical improvement.

**Wherefore** Plaintiff prays that judgment in his favor be entered against the Defendants jointly and severally on the causes of action for negligence, Jones Act negligence and unseaworthiness contained in the first and second counts of the Complaint, in an amount to be proven at trial and against D. Blake for maintenance and cure, contained in the third count of the Complaint, in amount to be proven at trial; together with pre and post judgment interest, costs and disbursements of this action.

Dated: New York, New York
April 12, 2013

TABAK, MELLUSI & SHISHA

_____
JACOB SHISHA (JS 5452)
29 Broadway
New York, NY 10006
(212) 962-1590